KENNETH W. DAEHLER AND MARY DAEHLER, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61831. Filed January 12, 1959.

*Ben Salter, Esq.*, for the petitioners.
*George L. Hudspeth, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The main question to be decided is whether the amount petitioner received from Anaconda upon the purchase of the property in question is taxable income, as determined by respondent, or is a reduction in the purchase price of the property, as contended by petitioner.

We do not think the facts support respondent's position.

The evidence shows Hicks, the owner, received for his property the net amount of $47,250, which amount he would have accepted had he not been obligated to pay or if he had been released from the requirement to pay or bear a 10 per cent brokerage commission on the sale. He was obligated to pay a commission to Hortt, his real estate broker, and was not interested as to whom, if anyone, Hortt would pay part of his commission. As far as Hicks was concerned he was glad to accept what he was offered and was paid for the property.

The evidence further shows, in our opinion, that the cost of the property to petitioner was not $52,500 as respondent claims, but was a lesser amount.

After petitioner became interested in purchasing the property on his own account he considered three things in deciding what he would pay for the property, the going price of the property, the questionable title to that part of the property represented by the abandoned street, and the amount that under normal conditions he would receive as a commission if he sold the property to an outside party. He realized that because the property was listed with Hortt the latter would receive his commission and that under the customary practice and the

understanding between Hortt and Anaconda, Anaconda would receive 50 per cent of Hortt's commission. He knew at the time he made the offer he would receive back a definite amount to which he would ordinarily have been entitled. In other words, his offer to buy was based on the proposition that the actual cost of the property to him would be $52,500, the amount of the formal offer, less $1,837.50, or $50,662.50.

Had petitioner not been a real estate salesman and had he offered to buy the property at a cost of $47,250 to the seller plus a commission of 5 per cent, instead of 10 per cent, for Hortt, and the offer had been accepted, would it be said that he had realized a taxable gain in not paying the full 10 per cent commission? We think not. He is in no different position than he would have been had he made an offer to his employer to buy the property by paying $47,250 to the owner, $2,625 to Hortt, and $787.50 to Anaconda. It is true that petitioner first called Hortt with the idea of selling the property to some third party and had he done so, Anaconda and he would have earned and realized a commission on the basis of their arrangement with Hortt. He thereafter became interested in the property as an investment of his own. He was not as the transaction resulted a salesman but a purchaser of the property at a cost to him of $50,662.50, and we think the respondent erred in determining that petitioner realized a commission on his purchase. We so hold. Cf. *Benjamin* v. *Hoey*, 139 F. 2d 945.

Petitioners paid an income tax for the year 1951 in the amount of $10,108.60 and the income they reported on their joint return for 1952 showed a tax liability of $23,722.06, yet on their declaration of estimated tax for 1952, they disclosed an estimated tax of only $7,500. It is obvious that that amount is less than 80 per cent of their tax liability and also substantially less than the tax they paid for 1951. Consequently, they are liable for an addition to tax under section 294 (d) (2) of the 1939 Code for substantial underestimation of their 1952 estimated tax. The statute makes it mandatory for such addition to be paid. See *A. E. Hickman*, 29 T. C. 864; *DeWitt M. Sherwood*, 20 T. C. 733; and *H. R. Smith*, 20 T. C. 663.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

PIERCE, *J.*, dissenting: The $1,837.50 which petitioner received from Anaconda was an employee's commission paid to him for personal services rendered by him to such employer. It was computed at a 70 per cent rate, by taking into consideration the *volume of business* transacted by petitioner under his employee arrangement with said

employer; and it was at the same rate as that which would have been paid to him in the case of any other sales brought about by him. This compensation for services rendered, definitely constituted gross income under section 22 (a) of the 1939 Code.

Moreover, there is no evidence that the compensation paid to petitioner by his employer in any way entered into the price negotiations between petitioner and Hicks, the owner of the real estate. What actually happened was this. Petitioner made a written offer of $52,500 for a parcel of real estate owned by Hicks, which Hicks had listed for sale with one Hortt, as the exclusive real estate agent therefor. This $52,500 offer was communicated to Hicks by Hortt's representative; and Hicks accepted the offer. Petitioner did not divulge that he was the purchaser, until after Hicks had already agreed to sell the property for $52,500. The sale was then consummated at said contract price. Petitioner paid the $52,500 with two checks totaling that amount. The deed was executed; and stamps for $52.50 (reflecting the $52,500 price) were affixed thereto. Hicks paid a prearranged 10 per cent commission to Hortt, totaling $5,250 (which again reflected the sale price of $52,500). The result was that Hicks became entitled to compute his gain from the transaction on the basis of the gross selling price of $52,500, less deductions for the $5,250 commission and for the expenses of the sale. Consistently the cost basis of the property to petitioner likewise was $52,500. There was no agreement between Hicks and petitioner that the price would be reduced by any rebate or discount.

Following said real estate transaction, Hortt received the above-mentioned commission of $5,250; and he split the same on a 50-50 basis with Anaconda, the other broker involved. Thus each broker received gross income, in the form of sales commissions, of $2,625. Anaconda then paid petitioner, as its employee, $1,837.50, based on the volume of business which petitioner had done for Anaconda. Anaconda deducted this payment as compensation paid to its salesman; and petitioner, the salesman, received said amount as an employee's compensation.

I would have held that said $1,837.50 constituted ordinary gross income to petitioner as an employee of Anaconda, under section 22 (a) of the 1939 Code. It in no way constituted a rebate or discount of the sales price agreed upon and paid by petitioner, in his transaction with Hicks.

HARRON, OPPER, WITHEY, and ATKINS, JJ., agree with this dissent.